## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 7** |
| | ) | |
| **SOUTHSTAR FUNDING, LLC,** | ) | **Bankruptcy Case No.** |
| | ) | |
| Debtor. | ) | **07-65842-pwb** |
| ———————————————— | ) | |
| | ) | |
| **DEUTSCHE BANK NATIONAL TRUST** | ) | |
| **COMPANY, as Trustee Under the Pooling** | ) | |
| **and Serving Agreement dated as of January** | ) | |
| **1, 2006, GSAMP Trust 2006-HE1,** | ) | |
| **a Delaware limited partnership,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SOUTHSTAR FUNDING, LLC,** | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

### NOTICE OF ASSIGNMENT OF HEARING

**PLEASE TAKE NOTICE** that DEUTSCHE BANK NATIONAL TRUST COMPANY,

as Trustee Under the Pooling and Serving Agreement dated as of January 1, 2006, GSAMP Trust

2006-HE1,("Deutsche Bank"), Movant herein, and pursuant to 11 U.S.C. § 362(d) has filed its

Motion for Relief From the Automatic Stay and related papers (the "Stay Relief Motion")  with

the Court seeking an order granting the Stay Relief Motion.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Stay

Relief Motion  in Courtroom 1401, United States Courthouse, 75 Spring Street, S.W., Atlanta,

Georgia at 10:00 a.m. on December 12, 2007.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including 2 addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

RESPECTFULLY SUBMITTED this the 14th day of November, 2007.

McCALLA RAYMER, LLC

By:/s/Kent E. Altom_____
   John G. Aldridge, Jr.
   Georgia Bar No.: 008326
   Marissa G. Connors
   Georgia Bar No.: 185692
   Kent E. Altom
   Georgia Bar No.: 014054
   Attorneys for DEUTSCHE BANK
   NATIONAL TRUST COMPANY, as
   Trustee Under the Pooling and Serving
   Agreement dated as of January 1, 2006,
   GSAMP Trust 2006-HE1

MCCALLA RAYMER, LLC
Six Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
(678) 281-6450 (phone)
(678) 277-4924 (fax)
kea@mccallaraymer.com (email)

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SOUTHSTAR FUNDING, LLC, | ) | Bankruptcy Case No. |
| | ) | |
| Debtor. | ) | 07-65842-pwb |
| | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, as Trustee Under the Pooling | ) | |
| and Serving Agreement dated as of January | ) | |
| 1, 2006, GSAMP Trust 2006-HE1, | ) | |
| a Delaware limited partnership, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHSTAR FUNDING, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under the Pooling and Serving Agreement dated as of January 1, 2006, GSAMP Trust 2006-HE1,("Deutsche Bank"), Movant herein, and pursuant to 11 U.S.C. § 362(d) files this its Motion for Relief From the Automatic Stay (the "Stay Relief Motion"). For this purpose, Deutsche Bank respectfully shows this Honorable Court as follows:

### STATEMENT OF FACTS

On March 29, 2007, Deutsche Bank filed its Complaint for Reformation, Declaratory

-1-

Judgement, and Equitable Relief (the "Complaint") against Cynthia J. Mauldin ("Mauldin") and

SouthStar Funding, LLC ("SouthStar") in the Superior Court of Cobb County Georgia, Civil Action

File No. 07-1-2695-33 (the "Civil Action").  A true and correct copy of the Complaint is attached

hereto as Exhibit "A" and incorporated herein by reference.  Deutsche Bank initiated the Civil

Action in order to correct a title issue resulting from SouthStar's mistaken cancellation of a security

instrument held by Deutsche Bank.  As alleged in the Complaint,

* * *

4.

On or about December 31, 2004 Mauldin obtained a loan from Southstar in
the original principal amount of ONE HUNDRED SEVENTY-FIVE THOUSAND
AND 00/100 DOLLARS ($175,000.00).  In order to secure repayment of this loan,
Mauldin executed a Security Deed in the original principal amount of ONE
HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS
($175,000.00).  This Security Deed is dated December 31, 2004 and recorded on
September 6, 2005 in Deed Book 14213, Page 6399, Cobb County, Georgia Records.
A true and correct copy of the Security Deed is attached hereto and incorporated
herein by reference as Exhibit "A."

5.

On or about September 29, 2005, Mauldin obtained a second loan in the
original principal amount of TWO HUNDRED THIRTY-EIGHT THOUSAND
FOUR HUNDRED and 00/100 DOLLARS ($238,400.00) from Mortgage Electronic
Registration Systems, Inc. as nominee for Southstar Lending, LLC. As evidence of
this indebtedness, Mauldin executed a Promissory Note dated September 29, 2005,
in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Southstar
(hereinafter "the Note").

6.

To secure repayment of the TWO HUNDRED THIRTY-EIGHT
THOUSAND FOUR HUNDRED and 00/100 DOLLARS ($238,400.00) loan,
Mauldin executed a Security Deed conveying real property, and the improvements
thereon, located at 4411 Cove Island Dr NE, Cobb County, Marietta, Georgia 30067
(hereinafter "the Property") to Mortgage Electronic Registration Systems, Inc. as

nominee for Southstar Lending, LLC. The Security Deed was recorded on September 29, 2005, at Deed Book 14231, Page 5947, Cobb County, Georgia Records. A true and correct copy of the Security Deed is attached hereto as Exhibit "B." This Security Deed was transferred and conveyed to the Plaintiff via Assignment to be recorded in the real estate records of Cobb County.

7.

On or about October 21, 2005, SouthStar inadvertently and by mistake recorded a Satisfaction of Security Deed (hereinafter the "Satisfaction") in Deed Book 14237, Page 4047, Cobb County, Georgia Records. This Satisfaction cancelled the Security Deed recorded in Deed Book 14231, Page 5947, which is now held by [Deutsche Bank]. Upon information and belief, this Satisfaction was intended to cancel the loan deed recorded in Deed Book 14213, Page 6399, Cobb County, Georgia Records because the body of the Satisfaction it [sic] identifies the loan deed that it is satisfying as being in the original principal amount of ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($175,000.00). The recording information it references however, is for the Security Deed held by [Deutsche Bank]. A true and correct copy of this Satisfaction is attached hereto as Exhibit "C."

* * *

Complaint, ¶¶ 4-7, attached hereto as Exhibit "A."  As evidenced by that certain Sheriff's Entry of Service dated April 10, 2007, SouthStar, by and through its registered agent, was properly served with a copy of the Complaint and Summons in the Civil Action (the "Entry of Service").  A true and correct copy of the Entry of Service is attached hereto as Exhibit "B" and incorporated herein by reference.  On April 10, 2007, Deutsche Bank caused that certain Lis Pendens to be recorded in Lien Book 20, Page 3862, Cobb County, Georgia Records (the "Lis Pendens").  A true and correct copy of the Lis Pendens is attached hereto as Exhibit "C" and incorporated herein by reference.  Thereafter, on April 11, 2007, SouthStar filed its Chapter 7 bankruptcy petition under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.  Neither Deutsche Bank nor its counsel has made any attempt to proceed with the Civil Action since SouthStar initiated this bankruptcy case.

## ARGUMENT AND CITATION OF AUTHORITIES

### THIS COURT SHOULD GRANT THE STAY RELIEF MOTION.

In filing the Stay Relief Motion, Deutsche Bank seeks a grant of relief from the automatic stay from this Court in order to proceed to judgment in the Civil Action. Pursuant to 11 U.S.C. § 362(a)(1), SouthStar's bankruptcy petition filing in the instant bankruptcy case acts to automatically stay the continuation of the Civil Action unless relief from the automatic stay is sought and granted. See 11 U.S.C. § 362(a)(1). The property involved in the Civil Action is 4411 Cove Island Drive, NE, Marietta, Cobb County, Georgia 30067 (the "Property"). A review of the bankruptcy schedules filed by SouthStar reveals that SouthStar does not claim any interest in the Property. Therefore, Deutsche Bank is entitled to a lifting of the automatic stay as "cause" under 11 U.S.C. § 362(d)(1) exists.[1] As such, this Court should grant Deutsche Bank relief from the automatic stay of 11 U.S.C. § 362(a) to allow Deutsche Bank to proceed to judgment in the Civil Action in order to protect its interest in the Property. Once a judgment correcting the title issue resulting from SouthStar's mistaken cancellation of a security instrument held by Deutsche Bank is obtained in the Civil Action, Deutsche Bank should be allowed to take those affirmative actions necessary in order to protect its interest in the Property, including but not limited to foreclosure. Litton further requests that any Order granting Litton stay relief not be stayed for ten (10) days after its entry as would otherwise be required under Bankruptcy Rule 4001.

---

[1] "'Cause' under § 362(d)(1) is not defined in the Bankruptcy Code and is determined on a case-by-case basis. [Cit.] When a party in interest alleges 'for cause' grounds for relief from stay, once the movant has established prima facie there is cause for relief from stay, the debtor bears the burden of proof by a preponderance of the evidence that 'cause' does not exist. [Cits.]" In re Davis, 1998 WL 34066146 (Bankr. S.D. Ga. 1998).

WHEREFORE, Deutsche Bank prays that this Court will:

(1)     Grant the Stay Relief Motion;

(2)     Modify Debtor's automatic stay protections under 11 U.S.C. § 362(a) to allow Deutsche Bank to proceed to judgment in the Civil Action and to otherwise take those affirmative actions necessary in order to protect its interest in the Property, including but not limited to foreclosure;

(3)     Order that the granting of the Stay Relief Motion and the modifying of SouthStar's automatic stay protections under 11 U.S.C. § 362(a) to allow Deutsche Bank to proceed to judgment in the Civil Action and to otherwise take those affirmative actions necessary in order to protect its interest in the Property, including but not limited to foreclosure, are not stayed for ten (10) days after its entry as would otherwise be required under Bankruptcy Rule 4001;

(4)     Grant such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this the 13th day of November, 2007.


                                        /s/Kent E. Altom
                                        John G. Aldridge, Jr.
                                        Georgia Bar No.: 008326
                                        Marissa G. Connors
                                        Georgia Bar No.: 185692
                                        Kent E. Altom
                                        Georgia Bar No.: 014054
                                        Attorneys for DEUTSCHE BANK
                                        NATIONAL TRUST COMPANY, as
                                        Trustee Under the Pooling and Serving
                                        Agreement dated as of January 1, 2006,
                                        GSAMP Trust 2006-HE1

MCCALLA RAYMER, LLC
Six Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
(678) 281-6450 (phone)
(678) 277-4924 (fax)
kea@mccallaraymer.com (email)

### IN THE SUPERIOR COURT OF COBB COUNTY
### STATE OF GEORGIA

DEUTSCHE BANK NATIONAL TRUST )
COMPANY, as Trustee Under the Pooling )
And Servicing Agreement dated as of January )
1, 2006, GSAMP Trust 2006-HE1 )
                                        )
       Plaintiff, )
v. )
                                          )
CYNTHIA J. MAULDIN AND SOUTHSTAR )
FUNDING, LLC )
                                          )
       Defendants. )

CIVIL ACTION FILE
NO. 0 7-1- 2695-33

### COMPLAINT FOR REFORMATION, DECLARATORY
### JUDGMENT, AND EQUITABLE RELIEF

COMES NOW, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee

under the Pooling And Servicing Agreement dated as of January 1, 2006, GSAMP Trust 2006

-HE1 (hereinafter "Deutsche Bank") and files this its Complaint for Reformation, Declaratory

Judgment and Equitable Relief against the Defendants, respectfully showing this Honorable

Court as follows:

1.

This action involves real property and the improvements thereon located at 4411 Cove

Island Dr NE, Cobb County, Marietta, Georgia 30067.

2.

Cynthia J. Mauldin (hereinafter "Defendant" or "Mauldin") resides and can be served

with summons and complaint at 4411 Cove Island Drive, Cobb County, Marietta, GA 30067.

Accordingly, the Defendant is subject to the jurisdiction of this Court and venue is proper herein

pursuant to Ga. Const. Art. 6, § 2, ¶.


EXHIBIT
A

3.

SouthStar Funding, LLC (hereinafter "Southstar") is a foreign corporation that is registered to do business in the state of Georgia.  SouthStar may be served by and through its Registered Agent, Therese G. Franzen, at 40 Technology Parkway South, Suite 202, Norcross, GA 30092. SouthStar is subject to the jurisdiction of this Court and venue is proper herein.

4.

On or about December 31, 2004 Mauldin obtained a loan from Southstar in the original principal amount of ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($175,000.00).  In order to secure repayment of this loan, Mauldin executed a Security Deed in the original principal amount of ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($175,000.00).  This Security Deed is dated December 31, 2004 and recorded on September 6, 2005 in Deed Book 14213, Page 6399, Cobb County, Georgia Records.  A true and correct copy of the Security Deed is attached hereto and incorporated herein by reference as Exhibit "A."

5.

On or about September 29, 2005, Mauldin obtained a second loan in the original principal amount of TWO HUNDRED THIRTY-EIGHT THOUSAND FOUR HUNDRED and 00/100 DOLLARS ($238,400.00) from Mortgage Electronic Registration Systems, Inc. as nominee for Southstar Lending, LLC. As evidence of this indebtedness,  Mauldin executed a Promissory Note dated September 29, 2005, in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Southstar  (hereinafter "the Note").

6.

To secure repayment of the TWO HUNDRED THIRTY-EIGHT THOUSAND FOUR HUNDRED and 00/100 DOLLARS ($238,400.00) loan, Mauldin executed a Security Deed conveying real property, and the improvements thereon, located at 4411 Cove Island Dr NE, Cobb County, Marietta, Georgia 30067 (hereinafter "the Property") to Mortgage Electronic Registration Systems, Inc. as nominee for Southstar Lending, LLC. The Security Deed was recorded on September 29, 2005, at Deed Book 14231, Page 5947, Cobb County, Georgia Records. A true and correct copy of the Security Deed is attached hereto as Exhibit "B." This Security Deed was transferred and conveyed to the Plaintiff via Assignment to be recorded in the real estate records of Cobb County.

7.

On or about October 21, 2005, SouthStar inadvertently and by mistake recorded a Satisfaction of Security Deed (hereinafter the "Satisfaction") in Deed Book 14237, Page 4047, Cobb County, Georgia Records.  This Satisfaction cancelled the Security Deed recorded in Deed Book 14231, Page 5947, which is now held by the Plaintiff. Upon information and belief, this Satisfaction was intended to cancel the loan deed recorded in Deed Book 14213, Page 6399, Cobb County, Georgia Records because the body of the Satisfaction it identifies the loan deed that it is satisfying as being in the original principal amount of ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($175,000.00). The recording information it references however, is for the Security Deed held by the Plaintiff. A true and correct copy of this Satisfaction is attached hereto as Exhibit "C."

## COUNT I

## REFORMATION

8.

Deutsche Bank re-alleges and incorporates by reference the foregoing Paragraphs 1 through 9 of its Complaint as if fully restated herein.

9.

Due to mistake, the real estate records do not accurately reflect the Parties' respective interests. The satisfaction of the Security Deed held by Plaintiff was done in error and, accordingly, the real estate records should be reformed to the extent necessary to reflect that it is of full force and effect, and that the Property remains encumbered according to the terms and provisions of the Security Deed.

10.

The real estate records and the documents should be reformed to void the mistaken satisfaction of the Security Deed. Additionally, upon information and belief, the loan deed recorded in Deed Book 14213, Page 6399 in the amount of ONE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100, was intended to be cancelled and therefore, Plaintiff seeks an order of the Court cancelling that deed.

11.

There is no adequate remedy at law to restore the Parties and Security Deed to the *status quo ante*.

## COUNT II

## DECLARATORY JUDGMENT

12.

Deutsche Bank re-alleges and incorporates by reference the foregoing Paragraphs 1 through 11 of its Complaint as if fully restated herein.

13.

This claim is an action for Declaratory Judgment brought pursuant to the provisions of O.C.G.A. §§ 9-4-1 *et seq.*

14.

An actual controversy exists between the Parties in this case in regard to the status of the mistaken satisfaction of Deutsche Bank's Security Deed.

15.

It is necessary and proper that the rights and status among the Parties hereto be declared, including with respect to the status of Deutsche Bank's Security Deed and mistaken satisfaction of the security instrument.

16.

Deutsche Bank seeks a declaration of rights, including a declaration that the Security Deed dated September 29, 2005 and recorded in Deed Book 14231, Page 5947, Cobb County, Georgia Records, remains of full force and effect; that Mauldin remains obligated on the Security Deed; and that the mistaken satisfaction of the security instrument recorded on October 21, 2005 at Deed Book 14237, Page 4047, Cobb County, Georgia Records is declared null and void.

## COUNT III

### EQUITABLE RELIEF

17.

Deutsche Bank re-alleges and incorporates by reference the foregoing Paragraphs 1 through 16 of its Complaint as if fully restated herein.

18.

If the mistaken satisfaction of the Security Deed is not canceled, Mauldin will be unjustly enriched and the intent of the Parties will not be fulfilled.

19.

The real estate records should be reformed to void and cancel the mistaken satisfaction of the Security Deed and to reinstate the Security Deed to the priority position it held prior to the recording of the mistaken Satisfaction.

20.

The satisfaction of the Security Deed resulted from mistake and, accordingly, the real estate records should be reformed to the extent necessary to reflect that the Security Deed is of full force and effect, and Mauldin remain obligated on the instrument according to its terms.

21.

There is no adequate remedy at law to restore the parties to the *status quo ante*.

WHEREFORE, Plaintiff DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee under the Pooling And Servicing Agreement dated as of January 1, 2006, GSAMP Trust 2006 -HE1 prays for relief as follows:

(a)    that the real estate records be reformed by voiding the mistaken Satisfaction of the Security Deed, and any subsequent transactions, putting the parties back in the position of Defendants Cynthia J. Mauldin owning the Property subject to a valid open Security Deed recorded at Deed Book 14231, Page 5947, Cobb County, Georgia Records held by;

(b)    that the Satisfaction of the Security Deed recorded at Deed Book 14237, Page 4047, Cobb County, Georgia Records be rescinded and made void so as to restore the Parties to their rights, interests, duties and obligations under the aforesaid instruments as prevailed prior to the recording mistaken Satisfaction;

(c)    that the Security Deed recorded in Deed book 14213, Page 6399, Cobb County, Georgia Records be declared satisfied;

(d)    that any purported conveyance, encumbrance, or transfer of the Property which occurred after the mistaken cancellation of the security instruments be rescinded and made void; and

(e)    That this Court award such other and further relief as may be just and proper.

This 27th day of March , 2007.

Respectfully submitted,

_Kimberly A. Weber_

KIMBERLY A. WEBER
Georgia State Bar No. 607566
Heather D. Bock
Georgia State Bar No. 122806

Attorneys for Plaintiff DEUTSCHE BANK
NATIONAL TRUST COMPANY, as Trustee
under the Pooling And Servicing Agreement dated
as of January 1, 2006, GSAMP Trust 2006-HE1

McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076-2102
(770) 643-2775
(770) 643-4253 (fax)

Deed Book 14213 Pg 6399
Filed and Recorded Sep-06-2005 01:54pm
2005-0157514
Georgia Intangible Tax Paid $819.00

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

Return To:
SouthStar Funding, LLC

400 Northridge Road, Suite
1000, Atlanta, GEORGIA 30350

Prepared By:

Ashlei McAleer
400 Northridge Road, Suite
1000, Atlanta, GEORGIA 30350

25

RETURN TO:
THOMAS H. BEISSWENGER
P. O. BOX 8104
ATHENS, GA 30603
(706) 208-8484

041248

———————[Space Above This Line For Recording Data]———————

# SECURITY DEED

MIN 100190821021063222

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **December 31, 2004**,
together with all Riders to this document.
(B) "Borrower" is **Cynthia Mauldin, Single Borrower**

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2102108322

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011 1/01

-6A(GA) (0005).02

Page 1 of 14          Initials: *CM*

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT

A

Deed Book 14213 Pg 6400

(D) "Lender" is SouthStar Funding, LLC

Lender is a Limited Liability Company
organized and existing under the laws of DELAWARE
Lender's address is 400 Northridge Road Suite 1000 Atlanta, GEORGIA 30350

(E) "Note" means the promissory note signed by Borrower and dated December 31, 2004
The Note states that Borrower owes Lender One Hundred Seventy Five Thousand and
00/100                                                                        Dollars
(U.S. $     175,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 01, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PRE-PAYMENT RIDER |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

2102108322

-6A(GA) (0008).01            Page 2 of 14            Initials: _____            Form 3011 1/01



Deed Book 14213 Pg 6481

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County

of                    Cobb                    :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

See Attached Exhibit A

Parcel ID Number:                                   which currently has the address of

4411 Cove Island Dr NE                                                     [Street]

Marietta                                [City] , Georgia  30067          [Zip Code]

("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2102108322

-6A(GA) (0005).02          Page 3 of 14          Initials: CM          Form 3011  1/01



Deed Book 14213 Pg 6482

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

2102108322



GDAP-6A(GA) (0005).02                Page 4 of 14        Initials: _____        Form 3011  1/01

(23)

Deed Book 14213 Pg 6403

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

2102108322

-6A(GA) (0003).02

Page 5 of 14

Initials C.A.

Form 2011 1/01



Deed Book 14213 Pg 6404

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

2102106322

-6A(GA) (0005).02                    Page 5 of 14          Initials: [signature]          Form 3011  1/01



Deed Book 14213 Pg 6405

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

2102108322

-6A(GA) (0005).02

Page 7 of 14

Initials: C.M.

Form 3011 1/01



Deed Book 14213 Pg 6410

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2102108322

—6A(GA) (0005).02    Page 12 of 14    Initial _____    Form 3011 1/01



Deed Book 14213 Pg 6411

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

2102108322

-6A(GA) (0005).42           Page 13 of 14           Initials: _____           Form 3011 1/01



Deed Book 14213 Pg 6412

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_Cynthia J Mauldin_ (Seal)      _____ (Seal)
Cynthia J Mauldin    -Borrower                         -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                         -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                         -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                         -Borrower

STATE OF GEORGIA,
Signed, sealed and delivered in the presence of:      Clark County ss:

_____
Unofficial Witness

_____
Notary Public,            Clark County
State of Georgia

THOMAS H. REISSWENGER
NOTARY
PUBLIC
ATHENS-CLARKE COUNTY, GA
EXP. OCT. 22, 2006

2102108322

-6A(GA) (0005).01           Page 14 of 14           Form 3011 1/01

(27)

Deed Book 14213 Pg 6413

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 31st                      day of
December, 2004                                            , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
SouthStar Funding, LLC

                                                                                (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
        4411 Cove Island Dr NE, Marietta, GEORGIA 30067 Cobb

                              [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in Declarations of Covenants,
Conditions, and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
        KINGS COVE

                        [Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

    PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

    A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
2102100322

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01
                                    Page 1 of 3                      Initials: 

-7R (0008)                VMP MORTGAGE FORMS - (800)521-7291



Deed Book 14213 Pg 6414

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

2102108322

7R (0008)                           Page 2 of 3            Initials: _____          Form 3150 1/01



Deed Book 14213 Pg 6415

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____(Seal)                          _____(Seal)
Cynthia J Mauldin          -Borrower                                   -Borrower

_____(Seal)                          _____(Seal)
                           -Borrower                                   -Borrower

_____(Seal)                          _____(Seal)
                           -Borrower                                   -Borrower

_____(Seal)                          _____(Seal)
                           -Borrower                                   -Borrower

2102108322

-7R (0006)                        Page 3 of 3                        Form 3150 1/01



Deed Book 14213 Pg 6416

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 31st              day of December, 2004        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to SouthStar Funding, LLC

("Lender") of the same date and covering the property described in the Security Instrument and
located at: 4411 Cove Island Dr NE, Marietta, GEORGIA 30067

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of                    7.375 %. The Note provides for
changes in the interest rate and the monthly payments, as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of  1/1/2007                 ,
and on that day every sixth        month thereafter. Each date on which my interest rate could change
is called a "Change Date."

2102108322
MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN   *THE WALL STREET
JOURNAL*) -Single Family-Fannie Mae Uniform Instrument

-838R (0006)        Form 3138 1/01
Page 1 of 4        Initials: Cm
VMP MORTGAGE FORMS - (800)521-7291



Deed Book 14213 Pg 6417

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Seven and One Quarter percentage points ( 7.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.375 % or less than 7.375 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.375 %. *

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

\* My interest rate will never be less than the initial rate.

2103108322

1220-938R (0008)                 Page 2 of 4              Initials: _Cu_                 Form 3138 1/01



Deed Book 14213 Pg 6418

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days form the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2102108322
838R / 99838R(200406.Rev())
838R.uff

Page 3 of 4

Initials _C. tes_



# PREPAYMENT PENALTY OPTION RIDER
## ADJUSTABLE RATE PROGRAM

FOR VALUE RECEIVED, the undersigned Borrower(s) agree(s) that the following provisions be incorporated into that certain Mortgage, Deed of Trust, or Security Deed, and all Riders referred to therein, of even date herewith (the "Security Instrument") executed by Borrower(s), as Grantor/Trustor(s), in favor of SouthStar Funding, LLC (the "Lender"), as beneficiary, and also in that certain Adjustable Rate Note (the "Note") of even date herewith executed by Borrower(s) in favor Lender. To the extent that the provisions of this Prepayment Penalty Option Addendum (the "Addendum") are inconsistent with the provisions of the Security Instrument and/or Note, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or Note.

Borrower(s) and Lender hereby agree as follows:

Section Five (5) of the Note is amended to read as provided below. In addition to the Covenants and Agreements made in the Security Instrument, Borrower(s) and Lender further covenant and agree as follows:

I/We have the right to make payments of principal at any time before they are due. The payment of principal only is known as a "prepayment". When I/We make a prepayment, I/We will tell the Note Holder in writing that I/We am/are doing so. If, within the first 24 months following the date of the Note and the Security Instrument I/We make a full prepayment or partial prepayment(s), I/We will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

IN WITNESS WHEREOF, the Borrower(s) has/have executed under Seal this Rider on this 31st day of December, 2004

Cynthia J Mauldin (signature) (SEAL) ______________ (SEAL)
Cynthia J Mauldin

______________ (SEAL) ______________ (SEAL)

2102108322

Prepayment Penalty Rider to be recorded with Security Instrument.

ARMR / PPA RACR"(01 2003.Rev(05))
ARMR.off

41

Deed Book 14213 Pg 6421

GEORGIA.

GRANTOR: Cynthia S Mauldin

LENDER: SouthStar Funding, LLC

DATE OF SECURITY DEED:   12/31/2004

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____  Cynthia J. Mauldin _____ (Seal)
                                            Cynthia S Mauldin      -Grantor

_____ (Seal)
                          -Grantor

_____ (Seal)
                          -Grantor

_____ (Seal)
                          -Grantor

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attorney personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

_____                              on the date set forth above,

_____                              _____
the undersigned                                              Closing Attorney

### BORROWER'S CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with getting a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

Cynthia J. Mauldin
Cynthia S Mauldin

GA-380(GA) (1101).04                         VMP MORTGAGE FORMS - (800)521-7291            1/04

Deed Book 14213 Pg 6422

# WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISE(S) BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGRESS THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR

|  |  |
|---|---|
| | -Grantor |
| Signed, Sealed and delivered in the presence of: | _Cynthia J Mullins_ (Seal) |
| | -Grantor |
| | _____ (Seal) |
| | -Grantor |
| | _____ (Seal) |
| | -Grantor |
| | _____ (Seal) |
| | -Grantor |
| NOTICE TO CLOSING AGENT, THIS | _____ (Seal) |
| DOCUMENT MUST BE RECORDED | |
| ALONG WITH SECURITY INSTRUMENT | |
| AND RIDERS | |

THOMAS H. BEISSWANGER
Notary Public
CLARKE COUNTY, GA

(43)

Deed Book 14213 Pg 6423
Jay C. Stephenson
Clerk of Superior Court Cobb Cty, Ga.

## EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 1117 of the 16th District, 2nd Section, Cobb
County, Georgia, being Lot 13, Block G, Unit II, Kings Cove Subdivision, according to plat recorded in Plat
Book 62, page 100, Cobb County Records, which plat is hereby referred to and made a part of this
description; being improved property having a house thereon known as 4411 Cove Island Drive, according
to the present system of numbering houses in Cobb County, Georgia.



FOR CANC SEE      (tab)
DE Book 14237 Page 4047

Return To:

SouthStar Funding, LLC

400 Northridge Road, Suite
1000, Atlanta, GEORGIA 30350

Prepared By:

Nichole   Johnson
, GEORGIA

23
54

. .\ TO:
. .AS H. BEISSWENGER
. . BOX 8104
. . NS, GA 30603
. .) 208-8484

Deed Book 14231 Pg 5947
Filed and Recorded Oct-10-2005 04:22pm
2005-0180534
Georgia Intangible Tax Paid $715.50

_Jay C. Stephenson_
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

RETURN TO:
THOMAS H. BEISSWENGER
P. O. BOX 8104
ATHENS, GA 30603
(706) 208-8484
050914

SCANNED

[Space Above This Line For Recording Data]

## SECURITY DEED

MIN 100190821021134892

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 29, 2005**
together with all Riders to this document.
(B) **"Borrower"** is **Cynthia J Mauldin, Unmarried Woman**

Borrower is the grantor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under
this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2102113489

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3011  1/01

-6A(GA) (2005).02

Page 1 of 14        Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT
B

Deed Book 14231 Pg 5948

(D) "Lender" is SouthStar Funding, LLC

Lender is a **Limited Liability Company**
organized and existing under the laws of DELAWARE
Lender's address is 400 Northridge Road Suite 1000 Atlanta, GEORGIA 30350

(E) "Note" means the promissory note signed by Borrower and dated September 29, 2005
The Note states that Borrower owes Lender Two Hundred Thirty Eight Thousand Four
Hundred and 00/100
                                                                                    Dollars
(U.S. $       238,400.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 01, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | PRE-PAYMENT RIDER |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

2102113489

Deed Book 14231 Pg 5949.

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**

of **Cobb** :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

See Attached Exhibit A

Parcel ID Number:                                    which currently has the address of
4411 Cove Island Dr Ne                                                        [Street]
Marietta                               [City] , Georgia  30067              [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

2102113489

-6A(GA) (0005).02                          Page 3 of 14        Initials                Form 3011 1/01

Deed Book 14231 Pg 5969
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 1117 of the 16th District, 2nd Section, Cobb
County, Georgia, and being Lot 13, Block G, Unit II, Kings Cove Subdivision, according to Plat recorded
in Plat Book 62, page 100, Cobb County Records, which plat is hereby referred to and made a part of
this description. Being improved property having a house thereon known as 4411 Cove Island Drive,
according to the present system of numbering houses in Cobb County, Georgia.

(050914.PFD/050914/6)

Deed Book 14237 Pg 4947
Filed and Recorded Oct-21-2005 01:42pm
2005-8188820

Jay C. Stephenson
Jay C. Stephenson
Clerk of Superior Court Cobb Cty, Ga.

RECORDING REQUESTED BY / RETURN TO:
Peelle Management Corporation
P.O. Box 30014, Reno, NV 89520-9819

Prepared by: E. N. Harrison

## Satisfaction Of Mortgage

WHEREAS the indebtedness secured by the mortgage described below has been fully paid and satisfied,
Mortgage Electronic Registration Systems, Inc.,
as nominee for SOUTHSTAR FUNDING LLC
owner and holder of the debt, hereby declares that the lien of said mortgage is forever discharged and satisfied.
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
Original Mortgagor: CYNTHIA J MAULDIN
Recorded in Cobb County, Georgia, on Book 14231 on Page 5947
Tax ID: 15111700220
Date of mortgage: 12/31/04 Amount of mortgage: $175000.00
DATE OF SATISFACTION: 10/09/05

NOW THEREFORE, the Clerk of Superior Court is hereby authorized and directed to record this instrument and to
cancel, release and discharge the mortgage in accordance with the regulations of said state and county as
provided in Code Section 44 - 14 - 4 of the O.C.G.A. for other mortgage cancellations.
DATED: 10/19/2005
Mortgage Electronic Registration Systems, Inc.
as nominee for SOUTHSTAR FUNDING LLC

By: _____          Attest: Kathy Barber
    Judy McColley                            Assistant Secretary
    Vice President

State of Nevada
County of Washoe
SIGNED, SEALED AND DELIVERED
in the presence of:                                    CORPORATE SEAL

Date Notarized: 10/19/2005   Yolanda Gonzales

Notary: C. Witt
My Commission Expires: 11/12/08

C. WITT
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 04-92033-2 - Expires November 12, 2008

Peelle Management Corporation, 4680 Longley Lane, Suite #8, Reno, NV 89602
LN# 0438957912 Investor LN# 9641230 P.I.F.: 10/06/05
FINAL RECON.m 90816 Clt;00 Inv#14A Id2 10/19/05 10-067 GA Cobb 2998;28 32
MIN# 1001908-2102108322-2   MERS Tel.#: 1-888-679-6377



EXHIBIT
C

SHERIFF'S ENTRY OF SERVICE                                    SC 85-2

Civil Action No. _07-1-2695-33_                              ☐ Superior Court      ☒ Magistrate Court  ☐
                                                            ☐ State Court         ☐ Probate Court     ☐
Date Filed __March 29, 2007__                               ☐ Juvenile Court

                                                            Georgia, _____ COBB _____ COUNTY

Attorney's Address                                          DEUTSCHE BANK NATIONAL TRUST
                                                            COMPANY, ET AL
Kimberly A. Weber, Esq.                                                              Plaintiff
McCalla Raymer, LLC
6 Concourse Parkway , Suite 3200                                        VS.
Atlanta, Georgia  30328
                                                            CYNTHIA J. MAULDIN AND SOUTHSTAR
Name and Address of Party to be Served.                     FUNDING, LLC

_Southstar Funding, LLC through its_                                                Defendant

_Registered Agent, Therese G. Franzer,_

_40 Technology Pkwy., South, Ste. 202,_

Norcross, Georgia  30092         SHERIFF'S ENTRY OF SERVICE                         Garnishee

**PERSONAL**

GWINETT COUNTY
I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS**

I have this day served the defendant_____by leaving a
copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of_____described as follows:
age, about_____years; weight_____pounds; height, about_____feet and_____inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant _Southstar Funding LLC_                          a corporation
by leaving a copy of the within action and summons with_____Shannon McDaniel /RA)_____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said
affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the
defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST**

Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

This__10__day of__April__,20_07_.

_____    _____
                                  Cpl Gilbert 091
                                                            DEPUTY

SHERIFF DOCKET_____ PAGE_____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

EXHIBIT
B

When recorded return to:
Kim Weber
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076

Please cross Reference to:
Security Deed recorded in Deed Book
14231, Page 5947 and also to the Satisfaction
Of Mortgage recorded in Deed Book 14237,
Page 4047.

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

DEUTSCHE BANK NATIONAL TRUST )
COMPANY, as Trustee Under the Pooling )
And Servicing Agreement dated as of January )
1, 2006, GSAMP Trust 2006-HE1 )

        Plaintiff, )

v. )

CYNTHIA J. MAULDIN AND )
SOUTHSTAR FUNDING, LLC )

        Defendants. )

Civil Action File
No. 07-1-2695-33

Lien Book    20 Pg 3862
Filed and Recorded Apr-10-2007 09:57am
2007-0056917

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

### LIS PENDENS

NOTICE is hereby given of the filing of the above referenced Complaint, Case Number 07-1-2695-33

the Superior Court of Cobb County, Georgia, on March 29, 2007, involving certain real property with the

address of 4411 Cove Island Dr., NE, Marietta, GA located in Cobb County, more particularly described

as follows ("the Property"):

> All that tract or parcel of land lying and being in Land Lot 1117 of the 16th District,
> 2nd Section, Cobb County, Georgia, and being Lot 13, Block G, Unit II, Kings
> Cove Subdivision, according to plat recorded in plat book 62, Page 100, Cobb County
> Records, which plat is hereby referred to and made a part of this description. Being
> improved property having a house thereon known as 4411 Cove Island Drive,
> according to the present system of numbering houses in Cobb County, Georgia.

Plaintiff in said action is seeking a judgment that reinstates it Security Deed recorded in Deed Book

14231, Page 5947, Cobb County Georgia Records. This Security Deed was mistakenly cancelled by that

certain Satisfaction of Mortgage recorded in Deed Book 14237, Page 4047, Cobb County. Plaintiff is seeking

a further order of the Court declaring that this Satisfaction of Mortgage is voided from the real estate records.



EXHIBIT

C

This 4th day of April, 2007.

Respectfully submitted,

Kimberly A. Weber
Georgia Bar No. 607566
Attorney for Plaintiff

McCALLA RAYMER, L.L.C.
Six Concourse Parkway
Suite 3200
Atlanta, GA 30328
(678) 281-6455

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MOTION FOR RELIEF FROM

THE AUTOMATIC STAY and NOTICE OF ASSIGNMENT OF HEARING has been served by

First Class Mail, postage pre-paid, upon the following parties in interest on the 13th day of

November, 2007:

J. Robert Williamson
Scroggins and Williamson
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303

Neil C. Gordon
Arnall Golden Gregory LLP
171 17th Street, NW
Suite 2100
Atlanta, GA 30363-1031

J. Michael Lamberth
William D. Matthews
Charity B. Neukomm
Lamberth, Cifelli, Stokes Ellis &
Nason, PA
Suite 550
3343 Peachtree Road
Atlanta, GA 30326

Harry W. Pettigrew
Pettigrew & Associates, P.C.
P.O. Box 4030
Decatur, GA 30031 Office of the U.S. Trustee
Suite 362
75 Spring Street, SW
Atlanta, GA 30303

Jeffrey W. Kelley
Troutman Sanders, LLP
Suite 5200
600 Peachtree Street, NE
Atlanta, GA 30308-2216

Bonnie K. Green
Frederick M. Thurman, Jr.
Shumaker, Loop & Kendrick, LLP
128 S. Tryon Street, Suite 1800
Charlotte, NC 28202

Office of the U.S. Trustee
75 Spring Street, Suite 362
Atlanta, GA 30303

/s/Kent E. Altom
Kent E. Altom
Georgia Bar No.: 014054
Attorneys for DEUTSCHE BANK
NATIONAL TRUST COMPANY, as
Trustee Under the Pooling and Serving
Agreement dated as of January 1, 2006,
GSAMP Trust 2006-HE1

MCCALLA RAYMER, LLC
Six Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
(678) 281-6450 (phone)
(678) 277-4924 (fax)
kea@mccallaraymer.com (email)